```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF GEORGIA
                      ATHENS DIVISION
```

HOLLY DRACZ,                          *

      Plaintiff,              *

vs.                                   *
                                    CASE NO. 3:04-CV-13(CDL)
                                *
AMERICAN GENERAL LIFE INSURANCE
COMPANY, as successor in interest*
to The Old Line Life Insurance
Company of America,                   *

      Defendant                *

O R D E R

In this case, Plaintiff, the beneficiary under a life insurance policy issued to her husband by Defendant, seeks to recover proceeds under the policy. Defendant contends that it is entitled to rescind the policy and that it is liable only for premiums paid because the insured made material misrepresentations in his insurance application. Presently pending before the Court are the following motions: 1) Defendant's Motion to Exclude Testimony of David Cook (Doc. 68); 2) Defendant's Motion to Strike Curtis Baggett as an Expert Witness (Doc. 73); 3) Defendant's Motion to Strike the Affidavit of Don Lehew (Doc. 93); and 4) Plaintiff's Motion to Compel (Doc. 90).[1] For the reasons set forth below, Defendant's Motion to Exclude Testimony of David Cook (Doc. 68) is granted, Defendant's Motion to Strike Curtis Baggett as an Expert Witness (Doc. 73) is granted, Defendant's Motion to Strike the Affidavit of Don Lehew

---

[1] Defendant has also filed a Motion for Summary Judgment which will be addressed in a separate order in the near future.

(Doc. 93) is denied as moot, and Plaintiff's Motion to Compel (Doc. 90) is denied as moot.

## BACKGROUND FACTS

Plaintiff's husband, Grzegorz Dracz, was the insured under a $200,000 life insurance policy issued by Defendant.  When Mr. Dracz applied for the insurance policy in 2001,[2] he was asked a series of questions about his background, including whether he had been charged with or convicted of driving under the influence of alcohol or drugs or had two or more driving violations in the five years preceding the application.  The application reflects that Mr. Dracz answered "no" to this question,[3] and a life insurance policy was issued to him on June 18, 2001 under a Select NT-2 rating with a premium of $0.68 per $1,000 in death benefit.

Mr. Dracz died on October 12, 2002, and Plaintiff filed a claim to collect the proceeds of the policy.  Defendant investigated Plaintiff's claim and found that Mr. Dracz *had* been convicted of driving under the influence of alcohol on August 24, 1996—within the five years preceding issuance of the insurance policy.[4]  Upon

---

[2]The application was taken in two parts.  The first part of the application was taken on April 3, 2001, and the second part—which included the question at issue in this case—was taken on May 31, 2001.

[3]Plaintiff alleges that Mr. Dracz actually answered "Yes" to this question—Question 5 on the application—and that Defendant altered his response on the application. Am. Compl. ¶ 20.  On Mr. Dracz's application, the "No" box to this question is checked, and the "Yes" box appears to have been checked and marked through.  This change is not initialed.  Question 5 also asks the applicant to explain a "Yes" response and provides a space for that explanation.  This space on Mr. Dracz's application is blank.

[4]Plaintiff has also admitted that Mr. Dracz was charged with DUI on February 25, 1999, although there is no documentary evidence of that charge in the record.  However, Defendant based its denial of Plaintiff's claim only upon the August 24, 1996 charge.

discovering this information, Defendant denied Plaintiff's claim, claiming that it would not have issued the particular policy if it had known about the DUI.  Plaintiff brought suit in the Superior Court of Elbert County for breach of contract and bad faith, and Defendant removed the action to this Court.  Plaintiff subsequently amended her Complaint to include claims for intentional alteration of contract and fraud.  Jurisdiction is predicated upon diversity of the parties.

DISCUSSION

*1. Defendant's Motion to Exclude Testimony of David Cook*

One of Plaintiff's theories in this case is that Mr. Dracz's misrepresentation about his DUI history[5] was not material and that Defendant was therefore not entitled to deny Plaintiff's claim and rescind the policy.[6]  Defendant has presented evidence that the misrepresentation was material because Defendant would not have issued the policy at the same rate had it known about the DUI. Plaintiff seeks to rebut this evidence by producing an expert witness, David Cook, whose opinion is that the misrepresentation was not material because "an experienced underwriter would have, in all likelihood, issued the policy as applied for knowing about the DUI instance."  Defendant seeks to exclude the testimony of Mr. Cook,

---

[5] The Court notes that it is also Plaintiff's contention that Mr. Dracz did not, in fact, make a misrepresentation at all, but in analyzing this issue regarding the testimony of David Cook, the Court assumes that such a misrepresentation was made.

[6] Under Georgia law, a material misrepresentation in an insurance application may prevent recovery under the contract.  O.C.G.A. § 33-24-7(b).

3

contending that Mr. Cook was not timely disclosed as an expert witness. Defendant also argues that Mr. Cook's testimony should be prohibited as a sanction for Plaintiff's discovery abuses. Plaintiff contends that she had good cause for the late disclosure of Mr. Cook.

Following is a brief recitation of the facts pertinent to this issue. The deadline regarding disclosure of expert witnesses in this case is governed by the Court's Rules 16 and 26 Order, which was entered on March 17, 2004: "A plaintiff desiring to use the testimony of an expert must disclose the identity of the expert within 90 days after the filing of the last answer of the defendants named in the original complaint." That Order also provided that this deadline may not be changed by the Joint Scheduling/Discovery Order submitted by the parties. Based on the deadline in the Court's Rules 16 and 26 Order, the parties in this case were to identify any expert witnesses on or before June 14, 2004. Plaintiff did not identify any expert witnesses on or before that deadline. Plaintiff has neither requested nor been granted an extension to that deadline.

As discovery progressed, Plaintiff was unsatisfied with Defendant's responses to her interrogatories and filed a Motion to Compel Defendant's response. That motion was granted in part and denied in part on February 23, 2005, and Defendant was ordered to respond to Plaintiff's first set of interrogatories number 10, "with the limitation that Defendant's responses may be restricted to life insurance policies where benefits were denied and the denial of benefits was related to a previous charge or conviction for driving under the influence of alcohol or drugs." Thereafter, Defendant disclosed on April 12, 2005 six instances in which drug or alcohol history was misrepresented on an application of its insured, noting

4

that benefits were denied in each case.  Although the Court entered an Amended Scheduling Order extending discovery to July 26, 2005,[7] that discovery was limited to the matters addressed in the February 23, 2005 Order—namely, Defendant's supplemental responses to interrogatory number 10.  Plaintiff was not granted an extension of discovery regarding matters outside of those addressed in the February 23, 2005 Order or an extension of the deadline to disclose expert witnesses outside of that scope.

On May 12, 2005, Plaintiff identified Mr. Cook as an expert in the field of insurance whose opinion is that Mr. Dracz's misrepresentation regarding the DUI was not material.  Defendant contends Mr. Cook's testimony is not based upon Defendant's supplemental responses to interrogatory number 10 and that his disclosure, nearly a year after the deadline set in the original Scheduling Order, is untimely.  The Court agrees.  Plaintiff seeks to introduce Mr. Cook's testimony to show that Defendant's practices are not consistent with insurance industry practices and that a prudent insurer would have issued the policy to Mr. Dracz at the same rate even if it had known about the DUI.  Defendant has contended all along—ever since it filed its Answer on March 15, 2004—that the misrepresentation was material.  Moreover, Plaintiff knew that this contention was an important one, and she has actively sought discovery regarding this issue.  She argues, however, that she did not know that she needed an expert until Defendant supplemented its response to interrogatory number 10 with six instances in which drug or alcohol history was misrepresented on an application.  This

---

[7]That deadline was later extended to August 5, 2005.

5

argument is unpersuasive. Defendant's supplemental responses to interrogatory number 10 do not, as Plaintiff suggests, "set forth," as a matter of first impression, Defendant's contention that it was standard practice for Defendant to deny claims based on a misrepresentation regarding DUI history—they merely bolster the argument that Defendant made all along. Furthermore, Mr. Cook, in coming to his opinion on the matter, relied not upon Defendant's supplemental responses to interrogatory number 10 but on "underwriting guidelines" of other insurance companies—sources which were available from the inception of the lawsuit.[8,9]

In this case, the Court set the schedule for disclosure of expert witnesses as authorized by Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure in its Rules 16 and 26 Order. Under Rule 16(b) of the Federal Rules of Civil Procedure, "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district judge. . . ." Here, Plaintiff's counsel has provided no logical explanation as to why it took her nearly a year after the deadline set in the Rules 16 and 26 Order to disclose Mr. Cook, and

---

[8] In contrast, if Plaintiff had retained an expert to offer an opinion as to whether Defendant's supplemental responses to interrogatory number 10 supported Defendant's representation regarding its *own* policy on materiality of DUI history, the disclosure of that expert might well have been timely based on the Amended Scheduling Order because such an opinion would have been based on the newly disclosed information.

[9] The Court notes that a small portion of Mr. Cook's expert report concerns his opinion regarding the six instances identified by Defendant in its supplemental responses to interrogatory number 10. Mr. Cook opines that these instances are distinguishable on the facts from Mr. Dracz's case because of the nature of the driving violations in those cases. An expert is hardly needed to distinguish these types of facts. The bulk of Mr. Cook's testimony—that which is the primary focus of Defendant's Motion to Exclude—addresses the material misrepresentation matter, which has been at issue in this case since the inception.

the Court finds that Plaintiff has not shown good cause for this extremely delayed disclosure. Were the Court to permit Plaintiff to use Mr. Cook as an expert, it would render meaningless the deadlines set in all of the Court's Rules 16 and 26 Orders and Scheduling/Discovery Orders. Moreover, such an indulgence in this case would make it difficult for the Court to require compliance with scheduling orders in its other cases—thus negatively impacting the integrity of the Court's scheduling orders in all cases. For these reasons, the Court grants Defendant's Motion to Exclude the Testimony of David Cook.[10]

*2. Defendant's Motion to Strike Curtis Baggett as an Expert Witness*

Another of Plaintiff's theories is that Mr. Dracz did not make a misrepresentation at all: he actually responded "Yes" to Question 5, and then his insurance application was intentionally altered. Defendant has presented evidence that Plaintiff answered "No" to Question 5. Plaintiff seeks to rebut that evidence by presenting Curtis Baggett, a handwriting expert who examined a copy of

---

[10]Had the Court not excluded Mr. Cook's testimony on these grounds, it would have had serious doubts about the admissibility of Mr. Cook's opinion testimony regarding the materiality of the DUI misrepresentation. First, it is not clear the Mr. Cook is even qualified to render an expert opinion in the field of insurance underwriting. *See* Fed. R. Evid. 702. Mr. Cook is an insurance agent and has never been an underwriter. It is not clear that he has the knowledge, skill, experience, training, or education necessary to render an opinion regarding insurance underwriting guidelines. Second, Mr. Cook's opinion testimony regarding what a prudent insurer would do is based upon internet research regarding underwriting guidelines and "verbal communications" with unidentified insurance company employees whom Mr. Cook contacted as an insurance agent to ask several questions about their underwriting guidelines. Plaintiff has made no showing that Mr. Cook's data procured from unauthenticated internet web sites and his conversations with unidentified insurance company employees would be admissible in evidence or that these "facts or data" are of a type reasonably relied upon by experts in the field of insurance underwriting in forming opinions regarding underwriting practices. *See* Fed. R. Evid. 703.

7

Mr. Dracz's insurance application and reached an opinion regarding the author and the sequencing of the marks in Question 5's check boxes.  Mr. Baggett concluded that both check marks were likely made by the same person.  As to the sequencing, Mr. Baggett opined "that there is doubt as to whether the no or the yes box was the final box checked" but that "it is probable that the yes box was the final box checked."[11]  Defendant contends that Mr. Baggett should be excluded as an expert because he is not a qualified document examiner and because his opinions are not reliable.

Under Rule 702 of the Federal Rules of Evidence, "a witness qualified as an expert by knowledge, skill, experience, training, or education" may testify in the form of an opinion "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  The trial court must act as a gatekeeper to ensure the reliability and relevancy of expert testimony:  for an expert's testimony to be admitted, the proffered expert must be qualified to render a reliable opinion based on sufficient facts or data and the application of accepted methodologies. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993).  Plaintiff has the burden to show by a preponderance of the evidence that Mr. Baggett's testimony is

---

[11] The Court notes that this opinion clearly does not support Plaintiff's intentional alteration of contract and fraud theories.  The only logical sequence of events supporting such theories is the following: First, Mr. Dracz answered "Yes" to Question 5, and then his insurance application was later altered.  For that theory to work, the "Yes" box would have to have been checked first rather than last.

8

admissible.  *Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1261 (11th Cir. 2004) (citing *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999)).

Defendant's first contention is that Mr. Baggett is not qualified to render an expert opinion in the field of handwriting analysis and document examination because he lacks sufficient knowledge, skill, experience, training, and education.  Plaintiff contends that Mr. Baggett is sufficiently qualified because (1) according to his expert report, he has twenty-two years of experience in the field of document examination;[12] (2) he received ten years of training and supervision in the field of handwriting analysis and document examination from Dr. Ray Walker;[13] (3) he received document examination training from the United States Army in 1960;[14] and (4) he served as a document examination consultant to a Dallas, Texas Justice of the Peace Court in 1991-92 and the Dallas County District Attorney's Office in 1991.[15]

---

[12] It is not clear that Mr. Baggett has been a full-time document examiner during that entire time period.  Mr. Baggett has stated that he is also a psychologist, a hypnotherapist, a psychotherapist and a graphologist.

[13] Mr. Baggett's expert report states that Dr. Walker was a "leading authority" in the field who was certified by the American Board of Forensic Document Examiners, the American Academy of Forensic Sciences, and the American Society of Questioned Document Examiners.  However, Defendant has presented evidence that Dr. Walker was not certified by or a member of any of these organizations.  Mr. Baggett admitted that this portion of his expert report was a "mistake."

[14] Mr. Baggett conceded that this course was merely an introductory course that was part of Officer Training School.

[15] This work consisted of comparing checks for forgeries and did not involve "sequencing," which is a key issue in the instant case.

Plaintiff argues that these qualifications put Mr. Baggett "on par" with the expert qualified as an expert in *United States v. Paul*, 175 F.3d 906, 911 (11th Cir. 1991). In *Paul*, however, the expert (1) was, undisputedly, a full-time handwriting examiner for thirty years, (2) was a member of four professional handwriting analysis organizations, (3) established "questioned document" laboratories for the Secret Service and the naval Investigative Service, (4) lectured and taught extensively in the field of handwriting analysis and (5) trained new "questioned document" examiners for law enforcement organizations. *Id.; see also United States v. Mooney*, 315 F.3d 54, 62 (1st Cir. 2002) (finding document examiner expert to be qualified because, *inter alia*, expert was certified by American Board of Forensic Document Examiners, expert was subjected to proficiency tests twice a year, and all of expert's work was reviewed by at least one other document examiner); *Wolf v. Ramsey*, 253 F. Supp. 2d 1323, 1344-45 (N.D. Ga. 2003) (finding document examiner expert to be qualified because, *inter alia*, expert was past president of American Society of Questioned Document Examiners, expert was member of American Board of Forensic Document Examiners, expert had authored authoritative texts, expert had completed the United States Army's two-year training program in Questioned Document Examination, and expert taught forensic document examination at several prominent schools).  Mr. Baggett's qualifications are clearly paltry in comparison.  Mr. Baggett is not certified by or a member of any of the twenty recognized document examiner trade organizations in the United States, such as the American Board of Forensic Document

10

Examiners ("ABFDE").[16]  There is no evidence that Mr. Baggett has ever established a government "questioned document" laboratory or trained law enforcement officers.  There is no evidence that he is routinely subjected to proficiency tests or that his work is regularly reviewed by at least one qualified document examiner.  There is no evidence that Mr. Baggett has ever authored an authoritative text in the field, completed an extensive document examination training program with the United States Army, or taught forensic document examination in a recognized program for that discipline.  At most, the evidence shows that Mr. Baggett received the vast majority of his training in this field not from a recognized or accredited program but from Dr. Ray Walker, whose own qualifications as a document examiner are suspect;[17] that he has worked as a document examiner based on this training for twenty-two years;[18] and that he had a one- or two-year stint examining checks for forgeries as a consultant to the Dallas, Texas Justice of the Peace Court and the Dallas County District Attorney's Office.  Therefore, the Court finds that Mr. Baggett is

---

[16] Other courts have highlighted ABFDE certification and membership as an important factor in determining a document examiner's qualifications. *See, e.g., United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992) (refusing to qualify Dr. Ray Walker as document examiner expert because, *inter alia*, he was not ABFDE member); *Wheeler v. Olympia Sports Ctr., Inc.*, No. 03-265-P-H, 2004 WL 2287759 (D.Me. Oct. 12, 2004) (noting, in order excluding Curtis Baggett's testimony, that Mr. Baggett was not member of ABFDE); *Wolf*, 253 F. Supp. 2d at 1342 (noting that ABFDE is "[t]he only recognized organization for accrediting forensic document examiners").

[17] *See Bourgeois*, 950 F.2d at 987 (refusing to qualify Dr. Ray Walker as document examiner expert for a variety of reasons).

[18] Again, it is not clear that Mr. Baggett was a full-time document examiner during this time period—he also purports to be a psychologist, a hypnotherapist, a psychotherapist and a graphologist.

11

not qualified to testify in this case as an expert in the field of handwriting analysis and document examination.

Even if the Court were to find Mr. Baggett to be qualified as an expert in this field, the Court could not find that Mr. Baggett's methodology is reliable under *Daubert*. Again, for an expert's testimony to be admitted, the proffered expert must be qualified to render a *reliable* opinion based on sufficient facts or data and the application of accepted methodologies. *Kumho Tire Co.*, 526 U.S. at 152; *Daubert*, 509 U.S. at 592-93. The Supreme Court in *Daubert* listed several factors which may be considered in the determination of whether expert evidence is reliable: (1) whether the expert's theory or technique can be (and has been) tested, (2) whether the expert's theory or technique has been subjected to peer review and publication, (3) whether the known or potential rate of error of the expert's technique is acceptable and whether there are standards controlling the technique's operation, and (4) whether the expert's theory or technique is generally accepted in the relevant scientific community. *Daubert*, 509 U.S. at 592-95; *see also Paul*, 175 F.3d at 910 n.4. In *Mooney*, the First Circuit upheld a trial court's application of these factors to a proffered handwriting expert's testimony. *Mooney*, 315 F.3d at 62. In that case, the trial court admitted the expert because the expert explained his methodology and because there was evidence that other document examiners employed the same methodology, that the methodology had been subject to peer review through published journals in the field, and that the methodology's accuracy had been tested, with one study concluding that certified document examiners using the methodology had a potential error rate of 6.5%. *Id.*

In contrast, this case is sorely lacking in any such evidence regarding Mr. Baggett's methodology or its reliability. According to his expert report, Mr. Baggett's "methodology" was

> [An] evaluation of comparability, quantity, and naturalness reviewing the Cumulative Range of Variation to determine the document handwriting probabilities and the physiological, neurological, and psychological factors peculiar to the writer. I determined whether the questioned writing was reproduced with sufficient resolution for comparison purposes, determined whether the questioned document appeared to be distorted, and then evaluated the questioned document for the consistency, variation style, and peculiar or identifying characteristics using a stereo star zoom American Optical 7X 1030X Twin Microscope and a Micronata Illuminated Microscope at 30X. Based on the analysis of this information, an opinion was reached as whether no conclusion could be drawn, a probable conclusion could be drawn, or a highly probable conclusion could be drawn as to authorship and sequence.

Noticeably absent from this "methodology" is any detailed explanation as to exactly *how* Mr. Baggett evaluated the documents and drew his conclusions regarding authorship and sequence. When asked during his deposition what methodology he used to determine authorship, Mr. Baggett testified that "There is no scientific methodology. It's a misnomer. There's not a scientific method in the sense of being a formal procedure. There is an analysis based upon the study of handwriting marks, including their length and width, the document, and sequence." Baggett Dep. 126. Mr. Baggett did testify in his deposition essentially that he blew up the documents and compared the writing to determine authorship, but he did not explain how he accomplished the comparison. There is nothing in the record to allow the Court to conclude, based on Mr. Baggett's vague and cursory explanation, that the techniques employed in his comparison are techniques that are generally accepted in the field, can be tested or

13

subjected to peer review, are subject to standards or have an acceptable known or potential rate of error. Similarly, with regard to sequencing, Mr. Baggett provided no detailed explanation as to what technique he used. Besides the general "methodology" recited *supra*, Mr. Baggett's report stated that

> Particular attention was drawn to Question No. 5 and a comparison of the "Yes" and "No" box. A review of the mark over of the "Yes" box indicates that an explanation was given as to why this box which was checked was marked subsequent to the "No" box having already been checked.

Plaintiff has pointed the Court to no detailed explanation of Mr. Baggett's sequencing technique—which apparently involved a review, with particular attention, of the Question 5 check boxes. As with the authorship technique, there is no satisfactory explanation of the technique used to determine sequence, and there is nothing in the record which would allow the Court to conclude that this technique is generally accepted in the field, can be tested or subjected to peer review, is subject to standards or has an acceptable known or potential rate of error. Therefore, the Court finds that Plaintiff has failed to establish the reliability of Mr. Baggett's testimony.

For all of these reasons, the Court grants Defendant's Motion to Strike Curtis Baggett as an Expert Witness.

*3. Defendant's Motion to Strike the Affidavit of Don Lehew*

Plaintiff submitted the affidavit of Don Lehew, a "professional expert document examiner," in response to Defendant's attack on Curtis Baggett's qualifications. The sole purpose of Mr. Lehew's affidavit is to bolster the credentials and report of Mr. Baggett, and the affidavit is only relevant to the issue of Mr. Baggett's

qualifications and report. Defendant has moved to strike this affidavit. This motion is denied as moot. In making its ruling regarding Defendant's Motion to Strike Curtis Baggett as an Expert Witness, the Court did not rely upon any evidence in the affidavit that is not admissible.[19]

*4. Plaintiff's Motion to Compel*

Plaintiff's Motion to Compel sought additional information with respect to four items. She partially withdrew that motion, asserting that only one issue had not been resolved by Defendant. The unresolved issue, according to Plaintiff, was Defendant's assertion of privilege as to e-mail correspondence between Nona E. Graves and Ray Sawicki, with a copy to Kelly R. Coleman, on January 6, 2004. Plaintiff contends that this correspondence was incorrectly designated as privileged and that Defendant refused to disclose it. However, in its August 19, 2005 letter to Plaintiff's counsel, Defendant conceded that the e-mail at issue was not privileged and enclosed a copy of the e-mail, with the attorney-client privileged information from other e-mails in the chain redacted. *See* Ex. A. to Def.'s Resp. to Pl.'s Mot. to Compel (Doc. 95). Because Defendant

---

[19]Such inadmissible evidence the Court did not consider includes, but is not limited to, the following:  1) Mr. Lehew's opinion that, based on Mr. Baggett's "Training and Experience," Mr. Baggett is qualified to be an expert in the field of handwriting analysis. This determination is for the Court, not Mr. Lehew. 2) Mr. Lehew's opinion that Mr. Baggett "is qualified to be a member of any national document examination organization." Though Mr. Lehew may be in a position to recommend Mr. Baggett for membership in these organizations, the determination of whether Mr. Baggett is qualified to be a member is for each individual organization, not Mr. Lehew. 3) Mr. Lehew's opinion that Mr. Baggett's expert report is "based upon sound analysis in the field of document examination." Mr. Lehew has not been qualified as an expert in this case, he has not provided the basis for his opinion regarding Mr. Baggett's report, and Plaintiff has not disclosed any expert report by Mr. Lehew, so this opinion cannot be considered by the Court.

has already provided the e-mail sought by Plaintiff's Motion to Compel, Plaintiff's motion is denied as moot.

## CONCLUSION

As discussed, Defendant's Motion to Exclude Testimony of David Cook (Doc. 68) is granted, Defendant's Motion to Strike Curtis Baggett as an Expert Witness (Doc. 73) is granted, Defendant's Motion to Strike the Affidavit of Don Lehew (Doc. 93) is denied as moot, and Plaintiff's Motion to Compel (Doc. 90) is denied as moot.

IT IS SO ORDERED, this 31st day of March, 2006.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE