IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

HOLLY DRACZ,                          *

          Plaintiff,                  *

vs.                                   *
                                           CASE NO. 3:04-CV-13(CDL)
AMERICAN GENERAL LIFE INSURANCE       *
COMPANY, as Successor in
Interest to The Old Line Life         *
Insurance Company of America,
                                      *
          Defendant
                                      *
_____      *


O R D E R

     Presently before the Court is Defendant's Motion for Summary
Judgment (Doc. 97).  For the reasons set forth below, this motion is
granted.  Also before the Court is Plaintiff's Motion to Set Aside
Default (Doc. 123).  This motion is denied as moot in light of the
Court's ruling on Defendant's summary judgment motion.  Finally,
before the Court is Plaintiff' Motion to Strike (Doc. 124).  This
motion is denied.[1]

_____

     [1]Plaintiff's Motion to Strike concerns two issues regarding
Defendant's reply to Plaintiff's response to Defendant's Motion for Summary
Judgment.  First, Plaintiff seeks to strike the portion of Defendant's
reply brief regarding the admissibility of David Cook's testimony.  The
Court previously excluded David Cook's testimony under a different theory.
Therefore, this portion of Plaintiff's Motion to Strike is denied as moot.
Second, Plaintiff seeks to strike the supplemental Declaration of Ron
Summers, which Defendant submitted along with its reply brief.  Plaintiff
claims that the supplemental declaration contains new evidence which
Defendant should have included in its summary judgment motion and to which
she had no opportunity to respond.  As discussed *infra* note 4, the
supplemental declaration was timely filed and does not contain new
evidence, and Plaintiff's Motion to Strike is therefore denied.  *See
Clinkscales v. Chevron U.S.A., Inc.*, 831 F.2d 1565, 1568 & nn. 8-9.

Case 3:04-cv-00013-CDL   Document 129   Filed 04/13/06   Page 2 of 10

BACKGROUND FACTS[2]

Plaintiff's husband, Grzegorz Dracz, was the insured under a $200,000 life insurance policy issued by Defendant.  Mr. Dracz applied for the insurance policy in 2001, and the application was taken in two parts.  The first part of the application was taken on April 3, 2001, and the second part—Part B, or the paramedical portion—was taken on May 31, 2001 by Toinette Teasley (now Toinette Teasley Harris), an employee of Exam One World Wide.  For the second part of the application, Ms. Teasley met with Mr. Dracz in his home and asked him a series of questions and recorded his answers on the application.  One of these was Question 5:  whether Mr. Dracz had been charged with or convicted of driving under the influence of alcohol or drugs ("DUI") or had two or more driving violations in the five years preceding the application.  According to Ms. Teasley, she checked the "No" box because Mr. Dracz told her that he had *not* been charged with or convicted of DUI within the five years preceding the application.  Although Plaintiff was home when Ms. Teasley met with Mr. Dracz regarding the application and was in the same room during portions of their meeting, she was in and out of the room and did not hear Mr. Dracz's answer to Question 5.  On Mr. Dracz's application, the "No" box to Question 5 is checked, and the "Yes" box is also checked but marked through.[3]  This change is not initialed.

---

[2]Although the Court construed the record in Plaintiff's favor as required on a motion for summary judgment, the Court previously excluded the testimony of David Cook and Curtis Baggett, Plaintiff's proffered experts in the fields of insurance and document examination, and the Court therefore did not consider this testimony in its review of the record.

[3]Ms. Teasley acknowledged in her September 13, 2005 Declaration that both check boxes were checked and that the check mark in the "Yes" box was marked through.  However, the record is bare as to the explanation for the

2

Question 5 also asks the applicant to explain a "Yes" response and provides a space for that explanation.  This space on Mr. Dracz's application is blank.  According to Ms. Teasley, she did not change or alter any of the answers that Mr. Dracz gave her.  After she asked Mr. Dracz all of the questions on the application and recorded his answers, Ms. Teasley gave the application to Mr. Dracz to review and sign.  Plaintiff contends that Mr. Dracz actually answered "Yes" to Question 5 on the application and that Defendant altered his response after Mr. Dracz signed the application.

After Mr. Dracz's application was taken, it was submitted to Defendant's underwriting department for review and approval.  As part of that review and approval process, Defendant determined which rating classification applied to Mr. Dracz.   The rating classification determined the premium to be charged.  Based on Mr. Dracz's application, Defendant issued him a life insurance policy on June 18, 2001 under a Select NT-2 rating with a premium of $0.68 per $1,000 in death benefit.

Defendant presented evidence that a DUI is a serious underwriting concern because it is a possible indication of increased

---

two marks.   Plaintiff makes much of the fact that Ms. Teasley did not address this issue in her Declaration, suggesting, perhaps, that the Court should construe this lack of explanation in Plaintiff's favor and against Defendant.  However, if Plaintiff desired to examine Ms. Teasley regarding this point, she might have attempted to depose Ms. Teasley.  Ms. Teasley, her role in the application process, and her testimony regarding Mr. Dracz's answer to Question 5 were known to Plaintiff prior to the close of the original discovery period.  *See, e.g.,* Pl.'s Resp. to Nov. 12, 2004 Mot. to Exclude Test. of Curtis Baggett (Doc. 36) (noting that first Declaration of Toinette Teasley Harris was served upon Plaintiff on August 27, 2004).  There is no evidence that Plaintiff attempted to examine Ms. Teasley or that any such attempt was thwarted by Defendant.  Therefore, the Court can infer nothing more from the record than this:  Ms. Teasley did not provide an explanation because she was not asked to do so.

risk.  According to Ron Summers, Defendant's Vice President and Chief Underwriter, under Defendant's underwriting guidelines, a Select NT-2 rating was not available to an individual who had been cited for a DUI within the five years preceding the application.  There were no exceptions to this rule.[4]  Therefore, according to Mr. Summers, Mr. Dracz would not have qualified for the Select NT-2 policy with a premium of $0.68 per $1,000 in death benefit had his DUI been disclosed.  Rather, Mr. Dracz would have qualified for the Standard

---

[4]In her response brief, Plaintiff argued, for the first time and without any supporting evidence, that the Select Rating Classification Worksheet ("worksheet") used by Defendant in its underwriting process creates a genuine issue of material fact as to whether Defendant actually would have issued a policy under the Select NT-2 rating to a person with a DUI charge or conviction in the five years preceding the application. Plaintiff asserts that the worksheet—as she interpreted it, without any evidence as to how Defendant actually used it—is in conflict with Defendant's underwriting guidelines as explained by Defendant's representatives.  Plaintiff interprets the worksheet to mean that a person could qualify for a Select NT-2 rating if he had *either* less than two motor vehicle violations in the three years preceding the application *or* no DUI in the five years preceding the application.  However, Mr. Summers stated in his supplemental Declaration that Plaintiff's interpretation is incorrect and that to qualify for the Select NT-2 rating, an insured could have *neither* two or more motor vehicle violations in the past three years *nor* a DUI in the past five years.  Plaintiff objects to this explanation, contending that it is new evidence to which she had no opportunity to respond.  Contrary to Plaintiff's assertion, this is not a "wholly new interpretation" of Defendant's underwriting guidelines—it is merely a response to Plaintiff's new and unsupported interpretation of the worksheet, and it restates Mr. Summers's previous statement that, without exception, a Select NT-2 rating was not available to an individual who had been cited for a DUI within the five years preceding the application. Because Local Rule 7.3 allows a summary judgment movant to file "any desired reply brief, argument or affidavit," because Defendant's reply and supplemental declaration were timely filed, and because the Court does not consider the evidence in the supplemental declaration to be "new," the Court declines to strike the supplemental Declaration. *See* M.D.Ga. R. 7.3; *Clinkscales*, 831 F.2d at 1568 & nn. 8-9.  Furthermore, even if the Court were to disregard the supplemental declaration, it would not find a genuine issue of material fact on the materiality issue based on Plaintiff's unsupported interpretation of the worksheet:  this type of conjecture is simply not the stuff that genuine issues of material fact are made of.

NT-4 policy with a premium of $1.07 per $1,000 in death benefit. Plaintiff has not rebutted this evidence.

Mr. Dracz died on October 12, 2002, within the contestable period of the policy. Plaintiff filed a claim to collect the proceeds of the policy. Defendant investigated Plaintiff's claim and found that Mr. Dracz *had* been convicted of driving under the influence of alcohol on August 24, 1996—within the five years preceding issuance of the insurance policy.[5] Upon discovering this information, Defendant denied Plaintiff's claim and attempted to rescind the policy, asserting that it would not have issued the particular policy if it had known about the DUI. Defendant tendered all premiums paid to Plaintiff, but Plaintiff refused to accept the returned premiums.

Plaintiff brought suit in the Superior Court of Elbert County, Georgia for breach of contract and bad faith, and Defendant removed the action to this Court. Plaintiff subsequently amended her Complaint to include claims for intentional alteration of contract and fraud based on her contention that Defendant altered Mr. Dracz's response to Question 5. Jurisdiction is predicated upon diversity of the parties.

## DISCUSSION

*1. Summary Judgment Standard*

Defendant is entitled to summary judgment if after construing the evidence in the light most favorable to Plaintiff and drawing all

---

[5]Plaintiff has also admitted that Mr. Dracz was charged with DUI on February 25, 1999, although there is no documentary evidence of that charge in the record. However, Defendant based its denial of Plaintiff's claim only upon the August 24, 1996 charge.

justifiable inferences in her favor, no genuine issues of material fact remain to be tried.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  It is not enough to have *some* alleged factual dispute; there must be a genuine issue of material fact to defeat a motion for summary judgment.  *Anderson*, 477 U.S. at 247-48.  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Anderson*, 477 U.S. at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party—there must be more than "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Anderson*, 477 U.S. at 248.

*2. Breach of Contract and Bad Faith Claims*

    Plaintiff asserts breach of contract and bad faith claims arising from Defendant's attempted rescission of the policy based on the alleged material misrepresentation.  Defendant contends that it was entitled to rescind Mr. Dracz's insurance policy because Mr. Dracz made a material misrepresentation on his application.  *See* O.C.G.A. § 33-24-7(b) (providing that material misrepresentation in insurance application may prevent recovery under contract).  Plaintiff argues that Mr. Dracz did not misrepresent his DUI history at all and that even if he did, such a misrepresentation was not material and thus does not justify rescission of the policy.

    *a. Did Mr. Dracz Make a Misrepresentation?*

    The evidence before the Court is that when Ms. Teasley asked Mr. Dracz if he had been charged with or convicted of DUI within the five years preceding the application, he answered "No."  It is undisputed that there is no explanation written in the blank for a

"Yes" response to the DUI question.  However, it is also undisputed that both the "Yes" and "No" boxes are checked, that the "Yes" box check mark is marked through, that the change was not initialed. Plaintiff contends that these three facts about the application give rise to an inference that only one box—the "Yes" box—was checked when Mr. Dracz signed the application and that this answer was subsequently altered by Defendant.  In the absence of some evidence to support this theory,[6] such an inference is not justifiable but is merely speculative.    For these reasons,  the Court finds that Plaintiff has failed to present adequate evidence to show that there is a genuine issue of material fact on the question of whether Mr. Dracz misrepresented his DUI history to Ms. Teasley and on the application.

   *b. Was Mr. Dracz's Misrepresentation Material?*

   Having found that there is no genuine issue of material fact as to whether Mr. Dracz made a misrepresentation on his application, the Court must now determine whether the misrepresentation was material. Under Georgia law, a material misrepresentation in an insurance application may prevent recovery under the contract.    O.C.G.A. § 33-24-7(b).  In general, a misrepresentation is considered material if it would influence a prudent insurer "'in determining whether or not to accept the risk, or in fixing a different amount of premium in the event of such acceptance.'"  *Lively v. S. Heritage Ins. Co.*, 256 Ga. App. 195, 196, 568 S.E.2d 98, 100 (2002)(quoting *Jackson Nat'l*

---

   [6]Such as expert testimony that the "Yes" box actually was checked first and then marked out later or other evidence rebutting Ms. Teasley's statement regarding Mr. Dracz's answer.

*Life Ins. Co. v. Snead*, 231 Ga. App. 406, 410, 499 S.E.2d 173, 176 (1998).

The issue of materiality is a question for a jury *unless* there are no genuine issues of material fact on the question. *See Snead*, 231 Ga. App. at 410, 499 S.E.2d at 176. An underwriter's statement that the insurance company would not have issued the policy as applied for can be sufficient to shift the burden to the plaintiff to show that the misrepresentation was not material. *See id.; Davis v. John Hancock Mut. Life Ins. Co.*, 202 Ga. App. 3, 5-6, 413 S.E.2d 224, 226 (1991). A plaintiff can demonstrate that the misrepresentation was not material by showing that the insurer did not rely on the application at all, *see Case v. RGA Ins. Servs.*, 239 Ga. App. 1, 3, 521 S.E.2d 32, 34 (1999), by showing that the underwriter's statement was merely a blanket statement unsupported by bright-line policies regarding the specific risk, *see Lively*, 256 Ga. App. at 196, 568 S.E.2d at 100, or by presenting a qualified expert to testify that a prudent insurer would have issued the policy even if it had known of the misrepresentation, *see Snead*, 231 Ga. App. at 410, 499 S.E.2d at 176. On the other hand, if the insurer presents an *uncontradicted* statement by its underwriter that the company would not have issued the policy as applied for based on its policy regarding the specific risk, summary judgment for the insurer on the materiality issue is appropriate. *See Davis*, 202 Ga. App. at 5-6, 413 S.E.2d at 226.

Defendant in this case has presented evidence that Mr. Dracz's misrepresentation regarding the DUI was material. According to Ron Summers, Defendant's Vice President and Chief Underwriter, under Defendant's underwriting guidelines, a Select NT-2 rating was not available to an individual who had been cited for a DUI within the

preceding five years—no exceptions.  Therefore, according to Mr. Summers, Mr. Dracz would not have qualified for the Select NT-2 policy with a premium of $0.68 per $1,000 in death benefit had his DUI been disclosed.  Rather, Mr. Dracz would have qualified for the Standard NT-4 policy with a premium of $1.07 per $1,000 in death benefit.  Plaintiff has submitted no admissible evidence to rebut this statement.  Therefore, the Court finds that Plaintiff has failed to show a genuine issue of material fact on the question of materiality.[7]  Accordingly, Defendant is entitled to summary judgment on Plaintiff's breach of contract and bad faith claims.

*3. Intentional Alteration of Contract and Fraud Claims*

In addition to her breach of contract and bad faith claims, Plaintiff asserts claims for intentional alteration of contract and fraud, alleging that Mr. Dracz actually answered "Yes" to Question 5 and that Defendant altered his response.  Both of these claims depend on a finding that Defendant intentionally altered the application with intent to defraud Mr. Dracz.  *See* O.C.G.A. § 13-4-1 (requiring, for intentional alteration of contract claim, that contract be "altered intentionally and in a material part thereof by a person claiming a benefit under it with intent to defraud the other party");

---

[7]Plaintiff contends that under *Pub. Sav. Life Ins. Co. v. Wilder*, 123 Ga. App. 754, 182 S.E.2d 536 (1971), Defendant is estopped from relying upon the misrepresentation to rescind the policy because of Defendant's "negligence" in failing to have Mr. Dracz initial the change to Question 5 and in failing to obtain a motor vehicle report on Mr. Dracz.  The *Wilder* rule is actually that an insurance company which, through its agent, has *actual knowledge* of facts amounting to a misrepresentation when it issues a policy, may not later rely upon the misrepresentation to rescind the policy.  *Id.* at 754, 182 S.E.2d at 537.  In *Wilder*, unlike the instant case, there was evidence that the insured responded truthfully to the application questions and that the agent misrepresented those answers on the application.  *Id.* at 755, 182 S.E.2d at 537.  Therefore, *Wilder* is clearly not applicable to the instant case.

*see, e.g., Baldwin v. Roberts*, 212 Ga. App. 546, 547, 442 S.E.2d 272, 274 (1994) (noting that tort of fraud has five elements: false representation, scienter, intention to induce plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff).  As discussed *supra*, there is no evidence that Mr. Dracz actually answered "Yes" to Question 5.  Moreover, there is no evidence that Defendant intentionally altered the application to reflect that Mr. Dracz responded "No" instead of "Yes."  For these reasons, regardless of whether Plaintiff may assert claims for intentional alteration of contract or fraud despite her election to affirm the contract, there is insufficient evidence to support either claim, and Defendant is entitled to summary judgment on both claims.

## CONCLUSION

Defendant's Motion for Summary Judgment is granted.  Plaintiff's Motion to Set Aside Default and Plaintiff's Motion to Strike are denied.

IT IS SO ORDERED, this 13th day of April, 2006.


                                        S/Clay D. Land
                                           CLAY D. LAND
                                    UNITED STATES DISTRICT JUDGE